MARY DRUCKER, as Executrix of EPHRAIM DRUCKER, Deceased, Appellant, *v.* MANHATTAN RAILWAY COMPANY et al., Defendants, and ESTHER DAVIS, Respondent.

Easements — reservation of easements and of all damages to be recovered for the invasion thereof by an elevated railroad — when such reservation binding upon subsequent grantees — action for the damages to such easements — rights of parties.

1. Whilst an easement cannot exist apart from the land to which it is appurtenant, and, therefore, cannot technically, as such, be reserved from a grant of the land, yet, where the reservation was in terms of the easement "now occupied and invaded" by an elevated railroad as well as of all damages present and future caused by the construction and future continuance of the elevated structure and the past and future operation of the railroad, this language shows that the parties intended that the grantor should reserve the right to all damages caused and to be caused by the construction and operation of the elevated railroad, as it then existed, both rental damages for the trespass and fee damages for the permanent occupation, in lieu of an injunction.

2. An implied obligation was thereby imposed on the grantee, as the holder of the legal title, to do what was necessary to enable the grantor to obtain for his beneficial interest the damages which it was plainly contemplated he was to have, and this agreement bore such relation to the subject of the grant, and so limited its extent, as to be binding upon subsequent grantees, although there was no mention of such reservation in the conveyance by which he took title.

3. Where such grantee was requested to bring, or join in, an action against the railroad company to recover the damages reserved by the agreement in question, which request was refused, and the executrix of the grantor, for whose benefit such damages were reserved, brings an action therefor against the railroad company, which stipulates to pay a designated sum as damages to whosoever the court awards it, the grantee having been made a party to the action, cannot raise objections to plaintiff's right to the damages. The parties are all before the court and the matters in controversy, including the respective rights of the plaintiff and defendant, should be finally adjudicated in this action.

*Drucker* v. *Manhattan Ry. Co.*, 161 App. Div. 165, reversed.

(Argued December 17, 1914; decided January 12, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 23, 1914, affirming a judgment in favor of defendant, respondent, entered upon a decision of the court on trial at Special Term.

On the 1st day of June, 1887, the plaintiff's testator, the then owner, conveyed certain premises in the city of New York abutting on Division street to Justus H. Zimmerman by a deed containing the following clause: "The said Ephraim Drucker reserves for himself any and all claim and causes of action against all the world for any and all losses and damages to himself and to the premises above described on account of the construction and the present and future continuance of the elevated railroad structure in Division Street and the past and future operation of the same and reserves to himself the easement now occupied and invaded by the said elevated railroad and the operation of the same." On the 29th of May, 1888, Zimmerman conveyed to the defendant Davis by full covenant warranty deed, in which there was no mention of the said reservation. On the 18th of October, 1888, the plaintiff's attorney wrote to the defendant Davis inquiring if she would be willing to have him commence a suit in her name as plaintiff, either alone or jointly with the plaintiff's testator, to recover the dam-

ages reserved as aforesaid. The defendant did not reply to the letter. This action was begun by service of the summons on the defendant railway companies on the 22d of November, 1888, and on the defendant Davis on July 19th, 1889. She did not appear in the action until June 19, 1910, when she served a notice of appearance. Prior thereto and on May 31st, 1910, the plaintiff's attorney had requested her to execute the necessary releases required by the Manhattan Railway Company, in which the Metropolitan Elevated Railroad Company was merged, and its successor, the Interborough Rapid Transit Company, to effect a settlement. On the 27th of June, 1911, a stipulation was entered into between the plaintiff and said companies, in which it was agreed that the damages, both rental and fee, to which the plaintiff should be entitled, if any, including costs and counsel fees, should be fixed at $7,250, which fixation of damages was to apply only in case the plaintiff procured a release from the defendant Davis or an adjudication that she had no interest in such damages. On the 15th of December, 1911, a stipulation was entered into between the said defendant Davis and the railway companies, in which it was agreed that, in case it should be adjudged in this action that the plaintiff is entitled to no rental damages for a period subsequent to May 31st, 1888, and no fee damages as an alternative to an injunction, then the defendant railway companies should pay for a conveyance of the easements occupied by them, and a release of any and all damages, the sum of $8,625, which was to include costs and counsel fees, of which sum $1,375 was to be for the fee and rental damages caused by the alterations and additions to the elevated railroad structure. On the 19th of July, 1911, the plaintiff was given leave to serve a supplemental complaint on condition that the defendant Davis be allowed to answer, and upon the issues framed by the supplemental complaint and the answers thereto, the case

35

came on for trial. The defendant railway companies raised no question as to the right of the plaintiff to recover, except by a motion, stated to be formal, at the opening of the case to dismiss the complaint, and at the close of the evidence counsel for the railway companies stated " that it is willing to have the sum mentioned in the stipulation offered in evidence apportioned among the other parties to the action as damages in any manner which the court deems proper."

*Roger Foster* for appellant. The effect of the reservation was to make the subsequent purchasers of the property trustees of such damages as might subsequently be awarded for the value of the easement, as an alternative to an injunction and as damages to the rental value of the land and any buildings that may thereafter be erected upon the same. (*Hindley* v. *Man. Ry. Co.,* 185 N. Y. 335; *L. & N. R. R. Co.* v. *Palmes,* 109 U. S. 244; *Rose* v. *Bunn,* 21 N.Y. 275; *Van Rennselaer* v. *A. & S. R. R. Co.,* 1 Hun, 507; 62 N. Y. 65; *W. U. Tel. Co.* v. *Shepard,* 169 N. Y. 170; *Schomacker* v. *Michaels,* 189 N. Y. 61; *Freund* v. *Biel,* 114 App. Div. 400; *Richardson* v. *Palmer,* 38 N. H. 212.) The defendant, Mrs. Davis, by reason of the record of the Drucker's deed with the reservation therein contained, took the premises with notice of such reservation and the obligations therefrom resulting and was bound by the same, in the same manner as the original grantee. (*Wilmurt* v. *McGrane,* 16 App. Div. 412; *Maurer* v. *Friedman,* 125 App. Div. 754; *W. U. Tel. Co.* v. *Shepard,* 169 N. Y. 170; *Pegram* v. *N. Y. El. R. R. Co.,* 147 N. Y. 135; *Schomaker* v. *Baum,* 118 App. Div. 906; *Munro* v. *S. L. S. & N. R. R. Co.,* 200 N. Y. 224; *Schomacker* v. *Michaels,* 189 N. Y. 61; *Miller* v. *Clary,* 210 N. Y. 127; *Darling* v. *Rogers,* 22 Wend. 483.) It is a well-settled principle of the law of trusts that when a trustee refuses to assert a cause of action, from which the beneficiary might profit, the beneficiary may sue to

compel the enforcement of the same. (*Pondir* v. *N. Y.,
L. E. & W. R. R. Co.*, 72 Hun, 384; *Sage* v. *Culver*,
147 N. Y. 241; *Anderson* v. *Daley*, 28 App. Div. 505;
*Williams* v. *Kiernan*, 25 Hun, 355; *Griffin* v. *Ford*, 14
N. Y. Super. Ct. 123; *Ettlinger* v. *Persian Rug & Car-
pet Co.*, 142 N. Y. 189; 66 Hun, 94; *Bowdoin College* v.
*Merritt*, 54 Fed. Rep. 55; *Hindley* v. *Manhattan Ry.
Co.*, 185 N. Y. 335.) There is no force in the contention
that the changes in the structure entitled Mrs. Davis to
any share of the damages. (*Bremer* v. *Manhattan Ry.
Co.*, 191 N. Y. 333; *Brush* v. *Met. Ry. Co.*, 44 N. Y.
S. R. 111; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101
N. Y. 98; *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268; *Kane*
v. *N. Y. El. R. R. Co.*, 125 N. Y. 164; *Pappenheim* v.
*M. E. R. R. Co.*, 128 N. Y. 436; *Miller* v. *Castleberry*,
49 Penn. St. 376; *W. U. Tel. Co.* v. *Shepard*, 169 N. Y.
170; *Glover* v. *Manhattan Ry. Co.*, 87 Hun, 621.)

*Isaac E. Bermant* and *Jacob W. Bermant* for respond-
ent. The facts which plaintiff herself pleaded and proved,
that the fee ownership of defendant Davis has existed
since 1888, and this action having been brought after
plaintiff parted with the title, bars and destroys plaintiff's
right of action. (*Kernochan* v. *N. Y. E. R. R. Co.*, 128
N. Y. 559; *Pegram* v. *N. Y. E. R. R. Co.*, 147 N. Y. 135;
*Shepard* v. *Manhattan Ry. Co.*, 169 N. Y. 160; *W. U.
Tel. Co.* v. *Shepard*, 169 N. Y. 170.) Even if defendant
Davis might be held to be plaintiff's trustee in respect of
any portion of the damages recoverable, still the judg-
ment should be affirmed. (*McKenna* v. *B. U. El. R. R.
Co.*, 184 N. Y. 391; *Anderson* v. *N. Y. & H. R. R. Co.*,
132 App. Div. 182.) Defendant Davis never assumed the
implied personal covenant of Zimmerman to damages;
she never received any consideration for such alleged
assumption; neither plaintiff nor her testator has estab-
lished any record notice that the purchaser of the prem-
ises from Zimmerman must take the same subject to

plaintiff's claim for future damages, and plaintiff's testa-
tor did not require Zimmerman to couple with the sale
of the premises any reservation of damages from his
grantee; defendant Davis paid to Zimmerman the full
consideration for an absolute unrestricted fee title, and
Zimmerman had the right to demand and receive such
full consideration, and to convey to Davis the absolute
fee title therefor. (*Miller* v. *Clary,* 210 N. Y. 127;
*Maurer* v. *Friedman,* 197 N. Y. 248.)

MILLER, J.    The learned justice at Special Term ruled on
the authority of *Pegram* v. *N. Y. Elevated R. R. Co.* (147
N. Y. 135) and *Western Union Telegraph Co.* v. *Shepard*
(169 N. Y. 170) that the plaintiff could not maintain the
action, even though the defendant Davis was chargeable
with notice of the reservation in the deed to her grantor.
The Appellate Division went further and held on the
authority of *Maurer* v. *Friedman* (197 N. Y. 248) and
*Miller* v. *Clary* (210 N. Y. 127) that said defendant was
not bound by said reservation.    After determining pre-
cisely what the rights of the parties are, we shall be
better able to decide whether they may be enforced in
this suit.
    The reservation was in terms of the easement "now
occupied and invaded " by the elevated railroad as well as
of all damages present and future caused by the con-
struction and future continuance of the elevated struc-
ture and the past and future operation of the railroad.
Whilst an easement cannot exist apart from the land to
which it is appurtenant and, therefore, could not techni-
cally, as such, be reserved from the grant (*Pegram* v.
*N. Y. Elevated R. R. Co., supra; Shepard* v. *Manhattan
Railway Co.,* 169 N. Y. 160; *McKenna* v. *Brooklyn
Union El. R. R. Co.,* 184 N. Y. 391), the language
employed shows plainly that the parties intended that the
grantor should reserve the right to all damages caused
and to be caused by the construction and operation of the

elevated railroad, as it then existed, both rental damages
for the trespass and fee damages for the permanent occu-
pation, in lieu of an injunction.   The *Story Case* (90
N. Y. 122) was decided in 1882.   In that case a reason-
able time was allowed the defendant to acquire the ease-
ment by condemnation or agreement.   It had been
decided in *Henderson* v. *N. Y. C. R. R. Co.* (78 N. Y.
423, 430) that a court of equity had jurisdiction to grant
full damages for a permanent occupation, or in the alter-
native, an injunction.   In that case the court said that on
performing the condition the defendant would become
"purchaser of the land with rights not inferior to those
obtained by appraisement and payment of damages under
the statute."   In *Lahr* v. *Metropolitan El. R. Co.* (104
N. Y. 268) full damages were allowed in an action at
law, the parties having agreed upon the rule of damages,
and later it became the settled practice in the elevated
railroad suits to award in equity rental damages for the
trespass and fee damages in lieu of an injunction for the
permanent occupation.   (*New York National Exchange
Bank* v. *Metropolitan El. R. Co.*, 108 N. Y. 660; *Pond* v.
*Metropolitan El. R. Co.*, 112 N. Y. 186; *Galway* v.
*Metropolitan El. R. Co.*, 128 N. Y. 132.)

The parties plainly contemplated, as this court has
said, that the existing invasion of the easements of light,
air and access was permanent (See *Kernochan* v. *N. Y.
E. R. R. Co.*, 128 N. Y. 559, at page 565; *Hindley* v.
*Manhattan Ry. Co.*, 185 N. Y. 335, at page 355), and the
grantor reserved the right to all damages resulting from
such invasion.   The trial court found: " It was the
mutual intention of plaintiff's testator and said Zimmer-
man that the reservation contained in said deed from the
former to the latter should apply to and effect only such
amount or extent of future damages as might be sus-
tained and suffered with the building upon said lot sub-
stantially as it then was."   We do not so construe the
agreement.   Of course, the parties did not contemplate a

greater invasion of the easements than then existed. But they did contemplate that the existing invasion was permanent, amounting to an appropriation *pro tanto* of the easements, precisely as though they had been condemned, and the grantor reserved all damages resulting from that appropriation, both temporary for the trespass and permanent for the taking. Presumably the consideration was reduced to the extent of the damages thus reserved. Whilst the grantor could not maintain a suit to enjoin the trespass after he had parted with the land (*Pegram* v. *N. Y. Elevated R. R. Co., supra*), as between himself and the grantee, he became equitably entitled to all damages which might be recovered in such a suit, awarded in condemnation or voluntarily paid by the railroad company, and upon the receipt or recovery thereof his grantee, or a subsequent grantee with notice, became a trustee for him. (*Western Union Tel. Co.* v. *Shepard, supra.*)

Was the defendant Davis chargeable with notice of the reservation in the deed to her grantor? The cases relied upon by the learned Appellate Division did not decide the point. The decision in *Maurer* v. *Friedman* (*supra*) was distinctly put upon the construction given to the following words of the agreement, itself, viz., " but this agreement shall not be construed in any manner as a lien or incumbrance or binding or affecting said described premises." (p. 251.) *Miller* v. *Clary* (*supra*) involved the question whether a covenant of a grantor, entirely dissimilar to the agreement involved in this case, was personal or ran with the land.

The occupation of the street by the elevated railroad amounted to a practical, though wrongful, severance of the easements from the abutting property. (*Kernochan* v. *N. Y. E. R. R. Co., supra*, at page 565.) The reservation of damages for that wrongful severance amounted in practical effect to the extinguishment of the easements to the extent of the invasion as far as any beneficial

interest therein of the abutting owner was concerned. In theory the easements passed to the grantee, but only to enable him to compel the wrongdoer to pay for them and because they could not exist apart from the land to which they were appurtenant. The whole difficulty in this case is theoretical and results from the fact that we are dealing with an incorporeal right. If the railroad had been built on the land itself and the part built on or damages to be awarded in condemnation proceedings then pending or in contemplation had been reserved from a grant it would be plain that subsequent grantees would be chargeable with notice of the reservation. Here the thing itself could not be reserved because from its nature it could not exist independently of the land. But its equivalent or substitute, the damages caused and to be caused by the appropriation of it by a third party, was reserved. In contemplation of the parties the easements invaded were severed or extinguished and the grantee was not to have the beneficial use or enjoyment of them. As between the grantee and the railroad company, the former acquired the legal title to all easements and alone could sue for their invasion; but, as between grantee and grantor, the former had only the naked legal title, the latter the entire beneficial interest. An implied obligation was thereby imposed on the grantee as the holder of the legal title to do what was necessary to enable the grantor to obtain for his beneficial interest the damages which the parties plainly contemplated he was to have. The agreement, therefore, bore such a relation to the subject of the grant, so limited the extent of the grant, and so affected the beneficial use and enjoyment of the thing granted as to be binding upon subsequent grantees. That such an agreement affects the " title to, or the possession, use, or enjoyment of " the real property conveyed was explicitly decided in *Schomacker* v. *Michaels* (189 N. Y. 61). As between grantor and grantee, the thing itself was reserved. Because of a

theoretical, technical difficulty, that could not be done at law, and so the naked legal title passed to the grantee, with the implied obligation to use it for the benefit of the grantor. The case in practical effect between grantor and grantee is, therefore, precisely the same as though part of the land itself, or an easement in the land, had been reserved. It was within the intention of the parties that the reservation directly affected the value and extent of the estate granted, and thus it was not merely a collateral personal agreement. Subsequent grantees were, therefore, bound to take notice of it. (*Norman* v. *Wells*, 17 Wend. 136; *Nye* v. *Hoyle*, 120 N. Y. 195; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 200 N. Y. 224.)

The defendant railway company does not question the rights of the plaintiff to maintain the action. Instead, though not actually paying the money into court, it avows its willingness to pay the sum fixed by the agreement of the parties as damages to whomsoever the court awards it. It is certainly not open to the defendant Davis to raise objections which will merely remit the plaintiff to another suit to compel her, as trustee, to account for the money. The parties are all before the court, the railroad company is willing to pay, and the court should finally adjudge upon the matters in controversy without subjecting the parties to the useless expense and trouble of another suit.

The situation is practically the same as in *Western Union Telegraph Company* v. *Shepard* (*supra*). There, it is true, the defendant had a judgment determining the obligation of the railroad company. Here it has been fixed by agreement. There the railroad company disputed its liability, here it admits liability and offers to pay, merely asking to be protected by a release from the holder of the legal title or by a judgment determining the rights of the parties. In that case the court said (p. 183): "In order to prevent a failure of justice, the court, which shapes its judgments in the most efficient forms,

may direct the payment by the defendants, the railroad companies, to the plaintiff of the amount of the judgment already recovered by the defendant Shepard against them." So in this case the court may direct the payment of the amount agreed upon to the party entitled to it. The *Pegram Case (supra)* is far from an authority in support of the judgment below. In that case the railroad company objected, and the court held that it was at least entitled to have the holder of the legal title in the action, so that it might be protected by the judgment. In that connection Judge GRAY, speaking for the court, said (p. 147): "If the plaintiffs had brought in Shortemeier as a party defendant in the action, the court would have been in a position to adjust the equities and rights of all the parties and to render a complete decree, which would have been binding upon each." So in the absence of fraud the railroad company may settle with the holder of the legal title, who thereupon becomes a trustee. (*McKenna* v. *Brooklyn Union El. R. R. Co., supra.*)

This court has not as yet decided that a grantor, who has made a reservation like that involved in this case, is utterly remediless unless his grantee sees fit to enforce the obligation of the railroad company, and the latter either voluntarily or by compulsion pays to the holder of the legal title the damages reserved. It is only necessary in this case to hold that it is not open to the defendant Davis to take objections, available, if at all, only to the railroad company.

There need be no difficulty in apportioning the recovery. The defendant is willing to pay $7,250 as the damages, including costs and counsel fees, caused prior to the changes in the elevated structure necessitated by the construction of the Manhattan bridge. The only other changes that have occurred since the reservation in question were those incident to the change from steam to electrical power, and the evidence, which is undisputed, tends to show that on the whole there has been less invasion of

the easements of light, air and access since those changes were made. The increase in the structure due to the installation of the third rail is obviously trivial, and the increase in the length and frequency of the trains is not an increase of user. (*Bremer* v. *Manhattan Ry. Co.*, 191 N. Y. 333.) We perceive no necessity for a new trial. The plaintiff and the defendant Davis have each made an agreement with the railway companies fixing the damages for the invasions of the easements which we hold that each is entitled to recover for. Under those agreements the plaintiff is entitled to $7,250, and the defendant Davis is entitled to $1,375. Upon payment of those sums to the respective parties the defendant railroad company is entitled to receive, and the defendant Davis should be required to execute and deliver, the usual conveyance and release.

The judgments should be reversed and final judgment directed in accordance with this opinion, with costs against the respondent Davis in all the courts.

Willard Bartlett, Ch. J., Chase, Collin, Hogan, Cardozo and Seabury, JJ., concur.

Judgment accordingly.